**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| EDMOND DUFFIN, ) <br> #R23746, ) <br> ) <br>      **Plaintiff,** ) <br> ) <br>   vs. ) <br> ) <br> TERRI ANDERSON, ) <br> KIMBERLY S. BUTLER, ) <br> RANDY S. PFISTER, ) <br> MINH T. SCOTT, ) <br> CHAD M. BROWN, ) <br> SALVADOR A. GODINEZ, ) <br> DONALD STOLWORTHY, ) <br> LESLIE MCCARTHY, ) <br> BILLIE W. GREER, ) <br> C/O REBECCA A. COWAN, and ) <br> ABERARDO A. SALINAS, ) <br> ) <br>      **Defendants.** ) | Case No. 17-CV-414-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Edmond Duffin, an inmate currently housed at Stateville Correctional Center ("Stateville"), filed this action pursuant to 42 U.S.C. § 1983. Plaintiff claims that his due process rights were violated in connection with disciplinary proceedings stemming from an April 22, 2014 disciplinary ticket that resulted in Plaintiff spending a year in disciplinary segregation.

This case is now before the Court for a preliminary review of the Amended Complaint (Doc. 13)[1] pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in

---

[1] Although this action was filed in April 2017, Plaintiff subsequently requested and was granted 90 days to file an amended complaint. (Docs. 11 and 12).

1

which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

    (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

        (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

        (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Amended Complaint

**Overview**

Plaintiff's claims stem from an April 22, 2014 disciplinary report charging Plaintiff with the offense of 205: Security Threat Activity. The report claimed that Plaintiff maintained a leadership position in the Gangster Disciples, a Security Threat Group ("STG"), at Menard. According to the Amended Complaint, the report was too generic to provide meaningful notice regarding the alleged charge. More specifically, the report did not provide any information regarding how Plaintiff was personally involved in any STG activity. Initially, Plaintiff was found not guilty of the charge. In an apparent effort to provide additional information, the report

2

was rewritten and a second hearing was held. This time, Plaintiff was adjudicated guilty, allegedly at the direction of Butler. Among other things, Plaintiff was disciplined with 1-year in segregation.

In October 2014, a member of the Administrative Review Board recommended that the revised report be remanded and rewritten to provide additional information regarding Plaintiff's personal involvement in STG activity. Accordingly, the disciplinary report was rewritten a second time, and Plaintiff attended his third hearing on the matter. Once again, Plaintiff was disciplined with 1 year in segregation. Upon completing his term in segregation, Plaintiff was immediately placed in administrative segregation based on his alleged involvement in STG activity. Plaintiff remained in administrative segregation for 531 days.

Plaintiff contends the original and revised notices he received prior to being disciplined with segregation were too vague and generic to comport with due process requirements. He also claims that the Adjustment Committee's findings relied entirely on the inadequate disciplinary reports and were not supported by any evidence, also violating Plaintiff's right to due process. Plaintiff raises similar claims with respect to his subsequent placement in administrative segregation.

**Disputed Disciplinary Report and Related Disciplinary Action**

On April 22, 2014, Plaintiff was served with an inmate disciplinary report ("Original IDR") charging him with the offense of 205: Security Threat Activity. (Doc. 13, p. 6; Doc. 13-1, pp. 2-4). The Original IDR provided, in relevant part, as follows:

> On the above date and approximate time, Menard CC Intelligence Unit concluded an investigation based on intelligence received concerning current Gangster Disciples STG leadership at Menard Correctional Center. The investigation was concluded on April 22, 2014, resulting in this disciplinary report being issued to offender EDMOND DUFFIN R23746 (known Gangster Disciples affiliate). During the investigation two confidential sources (names being withheld for the

safety and security of the institution and deemed reliable due to the consistency of their statements) identified offender DUFFIN as the current Gangster Disciples Director of Unilateral Force of Operations (UFO) at Menard Correctional Center.

(Doc. 13-1, p. 3). On April 29, 2014, Plaintiff was brought before the Adjustment Committee for a hearing. (Doc. 13, p. 7).[2] The Adjustment Committee was comprised of three correctional officers: (1) Jason Hart; (2) Rebecca Cowan, and (3) Robert Hughes. (Doc. 13, p. 7).[3] The Adjustment Committee found Plaintiff not guilty and released him from segregation. *Id.*

Kimberly Butler, who was the Chief Administrative Officer ("CAO") of Menard at that time, issued an order directing the issuing officer to rewrite the Original IDR. *Id.*[4] Plaintiff was returned to segregation and, on May 6, 2014, Plaintiff was served with the revised IDR ("Revised IDR"). *Id.*

The Revised IDR added the following pertinent information:

Throughout the duration of the investigation on offender DUFFIN, numerous incidents have occurred at Menard CC involving Gangster Disciples affiliates. These incidents include multiple fights/assaults isolated to GD affiliates. Also, numerous weapons have been discovered in the possession of multiple GD affiliates. These incidents have been identified as STG related incidents by Menard CC Intelligence Unit.

---

[2] It appears that Plaintiff intended to attach a copy of the Adjustment Committee's April 29, 2014 report. (Doc. 13.1, p. 5) (Exhibit B). However, the record attached is actually the Adjustment Committee's May 8, 2014 hearing report. (Doc. 13.1, pp. 6-7).

[3] Only Cowan is identified as a defendant in Plaintiff's Amended Complaint. Hart and Hughes are not identified as a defendants in Plaintiff's case caption or list of defendants (Hughes was identified as a defendant in the original complaint, but was not identified as a defendant in the Amended Complaint). Because these individuals are not listed in the caption, the Court will not treat him as defendants, and any claims against them should be considered dismissed without prejudice. *See* Fed. R. Civ. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

[4] The Adjustment Committee's report from the May 8, 2014 hearing states as follows: "IDR was remanded back to the Adjustment Committee on April 24, 2014 by the CAO. The ticket was re-written by intel staff for additional information to substantiate the charge of 205. CAO advised the adjustment committee to impose the following discipline: 1 year seg., C-Grade, and Loc." (Doc. 13-1, p. 16).

(Doc. 13-1, p. 11). On May 8, 2014, Plaintiff was brought before the Adjustment Committee for a hearing on the Revised IDR. (Doc. 13, p. 7; Doc. 13-1, pp. 13-16). The Adjustment Committee was comprised of two correctional officers: (1) Minh Scott and (2) Cowan. (Doc. 1, p. 7). At the hearing, Scott and Cowan told Plaintiff Butler directed them to enter a finding of guilty and impose a one-year term of segregation. (Doc. 1, p. 7; Doc. 13-1, p. 16). Plaintiff pleaded not guilty. (Doc. 13-1, p. 14). The Adjustment Committee found Plaintiff guilty. (Doc. 13-1, pp. 14-16). Plaintiff was ordered to segregation for 1 year, demoted to "C" grade for 1 year, placed on commissary restriction for 1 year, and subjected to restricted contact visits for 6 months. (Doc. 13-1, pp. 15-16). A disciplinary transfer was also imposed. (Doc. 13-1, p. 16). The basis for the Adjustment Committee's decision is a verbatim copy of the information provided in the Revised IDR. (Doc. 13-1, p. 16).

On June 30, 2014, Plaintiff was transferred to Pontiac Correctional Center Segregation Unit. (Doc. 1, p. 8). Plaintiff filed a grievance and, on October 21, 2014, Administrative Review Board member Leslie McCarthy recommended that the Revised IDR be remanded back to the issuing officer at Menard "to provide additional information as to how [Plaintiff] was identified as an active participant in STG activity." (Doc. 13, p. 8; Doc. 13-1, p. 18). The letter addressing Plaintiff's grievance further stated that "[u]pon rewrite, Menard is to forward the rewritten report to [Plaintiff's] current facility (PON), for it to be reserved, and reheard within established timeframes." (Doc. 13-1, p. 18). The recommendation was approved by S.A. Godinez (the director of the Illinois Department of Corrections ("IDOC") at that time). (Doc. 13, p. 8).

On January 20, 2015, Plaintiff was served with another revised IDR, dated January 15, 2015 ("Second Revised IDR"). (Doc. 13, p. 9; Doc. 13-1, pp. 30-33). The Second Revised IDR added the following language:

> Based on both confidential sources, offender DUFFIN held the Menard Institutional position of the Director of the Unilateral Force Operations. This position must be appointed by the Gangster Disciples and the appointee (DUFFIN) must accept the position. By offender DUFFIN accepting th[sic] position of Director of UFO's, DUFFIN, committed to upholding the laws, rules, and responsibilities designated to the Director of UFO's per the Staff Title Duties. This act is an overt and conscious decision to participate in Gangster Disciples Security Threat Group Activity at Menard CC. Also, DUFFIN is subsequently assuming responsibility for the actions of Gangster Disciples affiliates as it pertains to Gangster Disciples nation business.

(Doc. 13-1, p. 32). On January 23, 2015, Plaintiff was brought before the Adjustment Committee for a third time. (Doc. 13, p. 9). This time, the Adjustment Committee was comprised of two new correctional officers: (1) Chad Brown and (2) Aberardo Salinas. *Id*. Plaintiff pleaded not guilty. (Doc. 13-1, pp. 35-37). The Adjustment Committee, apparently relying on the Second Revised IDR as the only evidence, found Plaintiff guilty and imposed the same disciplinary action as the prior committee (1 year of segregation, disciplinary transfer, 1 year commissary restriction, 6 months restricted contact visits, and 1 year demotion to "C" grade). *Id.*

On April 25, 2015, Plaintiff completed serving a year in disciplinary segregation. (Doc. 13, p. 11). Three days later, on April 28, 2015, Plaintiff received a decision from the Administrative Review Board reducing his segregative term to 3 months. (Doc. 13, pp. 10-11).

Immediately upon being released from disciplinary segregation, Plaintiff was placed in administrative detention. (Doc. 13, p. 11). Three weeks later, on May 16, 2015, Plaintiff was served with a Notice of Administrative Detention Placement Review ("ADR Notice"). (Doc. 13, p. 11; Doc. 13-1, p. 50). The document indicated that Plaintiff was being considered for placement in administrative detention "due to his involvement in STG activity. DUFFIN is a self-admitted Gangster Disciple member, and has been identified as holding leadership roles for the STG within IDOC." (Doc. 13-1, p. 50). As with the original and revised IDRs, the ADR Notice alleged Plaintiff held a position of authority without describing how Plaintiff was

personally involved in STG activity. *Id*.

On May 21, 2015, Plaintiff was brought before the Administrative Detention Review Committee. (Doc. 1, p. 12). The committee was comprised of approximately 7 to 12 individuals. Brown was the committee chair. *Id*. Plaintiff submitted a written statement (Doc. 13-2, pp. 4-6) and objected to Brown serving as the chair person. *Id*. In his written statement, Plaintiff contended the description of the charge was so vague it was meaningless. *Id*. He also indicated that he had never "self admitted" to being a member of the Gangster Disciples. *Id*.

Plaintiff's placement in in administrative detention was approved on June 4, 2015. (Doc. 13-2, p. 8). The Counseling Summary provides as follows: "On 5/21/15 the AD Committee completed a[n] initial face to face review. The committee recommended/approved placement into AD Phase 1." *Id.* Ultimately, Plaintiff remained in administrative detention, on that charge, for 531 days (from April 25, 2015 through October 8, 2016). (Doc. 13, pp. 11-12).

**Livingston County Proceedings**

On December 29, 2014, Plaintiff filed a Petition for Writ of Mandamus with the Livingston County Circuit Court challenging the disciplinary proceedings stemming from the original and revised IDRs. *Duffin v. Baldwin, et al.,* No. 15-mr-150. (Doc. 13, p. 9). In May 2015, however, Plaintiff filed a motion to withdraw the petition because he had already completed his term in segregation and the petition had become moot. (Doc. 13, p. 12).

On September 16, 2015, Plaintiff filed a Petition for a Common Law Writ of Certiorari in Livingston County case No. 15-mr-150. Plaintiff argued that his due process rights were violated in connection with disciplinary proceedings stemming from the original and revised IDRs. On June 5, 2017, Plaintiff's petition was granted. (Doc. 13-2, pp. 47-53). The circuit court concluded Plaintiff's due process rights had been violated. More specifically, the circuit court concluded

7

(1) the IDRs were too general and vague to provide meaningful notice of the conduct with which Plaintiff was being charged; (2) the finding of guilt was premised on insufficient evidence (it appeared to rely entirely on the insufficient IDRs); and (3) The Adjustment Committee's "analysis," in each case, was insufficient and failed to satisfy the due process requirement of providing a written statement to the inmate. *Id*. The Circuit Court granted Plaintiff's petition and ordered as follows:

> [P]laintiff's petition is granted and this matter is remanded back to the Adjustment Committee to conduct a rehearing and provide a written statement outlining the evidence relied upon specifically as to plaintiff's active participation in the misconduct complained of, and the basis for the disciplinary action, or in the alternative, to restore plaintiff's good-time credits and demotion in grade.

(Doc. 13-2, p. 53).

Although the Livingston County Circuit Court references restoration of good-time credits, the disciplinary records attached to Plaintiff's Amended Complaint do not indicate that Plaintiff was punished with loss of good-time credits. Additionally, the Amended Complaint does not allege that Plaintiff was punished with loss of good-time credits. [5]

**Grievances**

The Amended Complaint references filing the following grievances in an attempt to challenge the original and revised IDRs and resultant disciplinary action:

- On June 30, 2014, Plaintiff filed a grievance with Godinez via the Administrative Review Board. (Doc. 13, p. 8). On April 28, 2015, Terri Anderson, a member of the Administrative Review Board, recommended that the grievance be denied. (Doc. 13, p. 10). Donald Stolworthy, approved the recommendation. *Id.* However, Anderson and Stolworthy also concluded that Plaintiff should have received 3months in segregation (as opposed to 1 year). (Doc. 13, pp. 10-11). Accordingly, Plaintiff's disciplinary segregation term was reduced to 3 months. (Doc. 13, p. 10).

---

[5] The Adjustment Committee's May 8, 2014 report indicates that Butler disciplinary action does not indicate that "LOC" was recommended by the CAO but the Adjustment Committee did not actually impose that sanction.

> The reduction came too late—Plaintiff had already completed serving a year in disciplinary segregation. *Id.*

- On November 2, 2014, Plaintiff filed a grievance with Randy Pfister, Pontiac's CAO, challenging "time-frame" violations. (Doc. 13, p. 9).

- On February 25, 2015, Plaintiff filed a grievance with Billie Greer, a member of the Administrative Review Board. (Doc. 13, p. 9). That grievance was denied on March 12, 2015. (Doc. 13, p. 10).

- On March 16, 2015, Plaintiff filed a grievance with Randy Pfister, Pontiac's CAO. (Doc. 13, p. 10).

- On March 17, 2015, Plaintiff filed another grievance with the Administrative Review Board. (Doc. 13, p. 10). Plaintiff never received a response. *Id.*

**Disciplinary Segregation – Conditions**

A portion of the Amended Complaint is devoted to comparing the conditions experienced by prisoners in disciplinary segregation to the conditions experienced by prisoners in the general population. (Doc. 13, pp. 13-15). Plaintiff contends that, unlike prisoners in the general population, prisoners in disciplinary segregation have fewer opportunities to recreate and exercise and have limited opportunities to participate in vocational, educational, and rehabilitation programs. *Id.* Plaintiff also notes the following (Doc. 13, pp. 14-16):

- Plaintiff was confined to his cell for 24 hours a day.
- Plaintiff was only allowed 1 shower a week.
- Plaintiff was only allowed to exercise outside of his cell twice a week.
- Plaintiff was strip searched any time he left his cell.
- Plaintiff was subjected to constant noise, making it difficult to sleep.
- At least 3 times per week, correctional officers disbursed pepper spray/tear gas/mace to control inmates, causing Plaintiff to cough and choke (coughing so intense his throat was sore).
- The "exercise yard" is a 15 by 8 foot single-man cage. The cage is hot in the summer and cold in the winter. Inmates often throw urine and feces in the cage.
- Plaintiff was unable to attend religious services.

9

**Merits Review Under § 1915(A)**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Fourteenth Amendment due process claim against Defendants for placing Plaintiff in disciplinary segregation for a year in connection with the Original IDR, Revised IDR, and/or Second Revised IDR.

**Count 2 –** Fourteenth Amendment due process claim against Defendants for placing Plaintiff in administrative detention for 531 days.

**Count 1**

Whether any process is due for a sanction of segregated confinement turns on the severity of the confinement: if the "period of segregated confinement is protracted or the conditions in segregation unusually harsh," some process is required; if not, no process is owed to a prisoner. *Toston v. Thurmer*, 689 F.3d 828, 832 (7th Cir. 2012). The punishment meted out in Plaintiff's case—one year of time in disciplinary segregation—is the kind of discipline that may trigger Fourteenth Amendment due process requirements. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir.2009) (noting that a "claim of confinement in segregation for 240 days may implicate a liberty interest").[6] Accordingly, without delving into the conditions of segregation

---

[6] In *Marion*, the Seventh Circuit noted other circuits have held that "periods of confinement that approach or exceed one year may trigger a cognizable liberty interest without any reference to conditions." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 699 n.4 (7th Cir. 2009). *See Iqbal v. Hasty*, 490 F.3d 143, 161 (2d Cir. 2007), *cert. granted sub nom. Ashcroft v. Iqbal*, 554 U.S. 902 (2008) (explaining that a segregated confinement of 305 days or more necessarily triggers due process protections, and segregation lasting 101 to 305 days may trigger due process protections, depending on the conditions of segregation); *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) (reversing dismissal of claim involving 750 days' segregation, stating that when a "prisoner is subjected to a lengthy period of segregation, the duration of that confinement may itself be atypical and significant"); *Williams v. Fountain*, 77 F.3d 372, 374 (11th

discussed in the Complaint, the Court finds that Plaintiff has alleged a deprivation sufficient to survive preliminary review.

Plaintiff also has sufficiently alleged that he did not receive the requisite due process protections. In the prison disciplinary context, due process requires that the inmate receive "advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decision maker, and a written explanation supported by at least 'some evidence' in the record, for any disciplinary action taken." *Langstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) (citations omitted). Plaintiff has alleged that the IDRs he received were too vague to provide meaningful notice of the charges, that he was not afforded an impartial decision maker during at least one of the hearings, and that the charges were not supported by any evidence.

Accordingly, Count 1 may proceed, but only as to those defendants who were personally involved in the alleged deprivation. In this case, that includes Defendants Butler, Scott, Brown, Cowan, and Salinas.

As to Defendants Anderson, Pfister, Godinez, Stolworthy, McCarthy, and Greer, Plaintiff has only alleged involvement in reviewing, responding to, denying, and, in some cases, granting Plaintiff's grievances. Generally, the denial of a grievance—standing alone—is not enough to violate the United States Constitution. *See, e.g., George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged

---

Cir. 1996) (holding that one year of solitary confinement was sufficient to state a claim); *but see Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months' segregation, alone, does not implicate a liberty interest). The Appellate Court also suggested that whether a term of this length is a type of "atypical, significant hardship," for purposes of a denial of due process claim, cannot be decided at the pleading stage. *Marion*, 559 F.3d at 697–98.

mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). *See also Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428-29 (7th Cir. 2017) ("inaction following receipt of a complaint about someone else's conduct is not a source of liability"). Further, there is no indication that these individuals are subject to liability under the standard discussed in *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015)[7] and related case law. Accordingly, Count 1 shall be dismissed without prejudice for failure to state a claim as to these individuals.

## Count 2

The placement of inmates in administrative segregation or detention is discretionary. Such a cell assignment does not give rise to a protected liberty interest or the right to a notice and hearing. Plaintiff thus cannot maintain a Fourteenth Amendment claim over the detention he describes.

Illinois statutes and correctional regulations do not place limitations on the discretion of prison officials to place inmates in administrative segregation, including investigative or temporary lockdown or confinement and involuntary protective custody; accordingly, there is no liberty interest implicated by an inmate's placement in these forms of segregation. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995); *Pardo v. Hosier*, 946 F.2d 1278, 1281-84 (7th Cir. 1991); *Kellas v. Lane*, 923 F.2d 492, 494-95 (7th Cir. 1991); *see generally Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983). *See also Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir. 1996) (continued confinement in administrative detention does not implicate a constitutionally protected liberty interest).

---

[7] As discussed in *Perez*, a grievance official may be subject to liability for deliberate indifference if he or she "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it."

Accordingly, Count 2 shall be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**Pending Motions**

Plaintiff's Motion for Service of Process at Government Expense (Doc. 3) is **DENIED**. The Court will order service as a matter of course upon all defendants who remain in this action pursuant to this screening order because Plaintiff is a prisoner who has also requested permission to proceed in this action as a poor person.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **BUTLER, SCOTT, BROWN, COWAN,** and **SALINAS. COUNT 1** is **DISMISSED** without prejudice as to **ANDERSON, PFISTER, GODINEZ, STOLWORTHY, MCCARTHY,** and **GREER** for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED** with prejudice for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that **ANDERSON, PFISTER, GODINEZ, STOLWORTHY, MCCARTHY,** and **GREER** are **DISMISSED** from the Complaint without prejudice for failure to state a claim upon which relief can be granted. The Clerk of Court is **DIRECTED** to **TERMINATE** these individuals as Defendants in CM/ECF.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for **BUTLER, SCOTT, BROWN, COWAN,** and **SALINAS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff.

If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than

**7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: December 5, 2017**

                                                              **NANCY J. ROSENSTENGEL**
                                                              **United States District Judge**